AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico
Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| United States of America <br> v. <br> Larence Larry Harris Cambridge <br> year of birth 1990 <br> *Defendant(s)* | ) ) ) ) ) ) ) <br> Case No. **24mj41** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  January 09, 2024  in the county of  San Juan  in the
  District of  New Mexico , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed within Indian Country |
| 18 U.S.C. § 113(a)(3) | Assault with a dangerous weapon |

This criminal complaint is based on these facts:

See attached affidavit, submitted by FBI Special Agent Travis Kosir and approved by SAUSA Elisa Dimas.

☑ Continued on the attached sheet.

*Complainant's signature*

FBI SA Travis Kosir
*Printed name and title*

Telephonically sworn and electronically signed.

Date: 1/11/2024

*Judge's signature*

City and state: Albuquerque, New Mexico    Kirtan Khalsa, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **IN THE MATTER OF:**<br><br>Larence Larry Harris Cambridge,<br>year of birth 1990 | Case No. |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Travis Kosir, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is made in support of a Criminal Complaint and Arrest Warrant for Larence Larry Harris Cambridge, (referred to herein as "CAMBRIDGE"), year of birth 1990.

2. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), where I have been employed in that capacity since March 2016. I am currently assigned to the Albuquerque Division of the FBI, Farmington Resident Agency, and have primary investigative responsibility for crimes that occur in Indian Country, including violent crimes such as homicide, robbery, arson, aggravated assault, and sexual assault. My law enforcement experience includes, but is not limited to, collecting evidence, interviewing subjects and witnesses, writing affidavits for and executing search warrants, conducting surveillance, supervising cooperating sources, issuing subpoenas, analyzing phone records, and analyzing financial records. I am trained and have experience in the investigation of murder, assault, sex abuse, and other violent crimes committed in Indian Country.

1

## PURPOSE OF AFFIDAVIT

3. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. §§ 113(a)(3), 1153: Assault with a Dangerous Weapon in Indian Country, (the "Target Offenses") has been committed, are being committed, and/or will be committed by CAMBRIDGE.

4. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for the limited purpose of establishing probable cause to conduct a search of and for the items described in Attachments A and B for evidence, contraband, and/or instrumentalities of the criminal conduct described herein. Additionally, unless otherwise indicated, wherever in this Affidavit I assert that an individual made a statement, that statement is described in substance herein and is not intended to be a verbatim recitation of such statement. Furthermore, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part. The following is true to the best of my knowledge and belief.

## STATUTORY AUTHORITY

5. CAMBRIDGE and the alleged victim in this case (C.Y. with the year of birth of 1978, hereinafter "JANE DOE") are both enrolled members of the Navajo Nation Indian tribe, a federally recognized tribe.

6. The crimes described in this affidavit occurred in vicinity of GPS coordinates N36°47.096 W108°40.677, which is within the exterior boundaries of the Navajo Nation Indian Reservation.

## PROBABLE CAUSE

7. On or about January 09, 2024, the Albuquerque Division, Farmington Resident Agency of the FBI was notified by Navajo Nation Department of Criminal Investigations ("NNDCI") of a shooting which occurred on U.S. Highway 64 in Shiprock, NM, within the exterior boundaries of the Navajo Nation Indian Reservation. Navajo Police Department ("NPD") officers and emergency medical personnel responded to an emergency call and identified JANE DOE with an apparent gunshot wound to her leg. JANE DOE was transported to Northern Navajo Medical Center ("NNMC") in Shiprock, NM for medical treatment.

8. On or about January 09, 2024, investigators from the FBI and NNDCI observed JANE DOE's vehicle parked along the side of U.S. Highway 64. Investigators observed what appeared to be three bullet holes in the driver door and one hole in the driver side rear passenger door of JANE DOE's vehicle. Investigators also observed what appeared to be blood stains on the roadway immediately below the driver door of JANE DOE's vehicle. JANE DOE's husband, who arrived on scene after the incident, provided consent to search the vehicle. Investigators located what appeared to be a fired bullet on the driver seat runner board inside JANE DOE's vehicle.

9. On or about January 09, 2024, investigators from the FBI and NNDCI conducted a search of the public roadway where the reported shooting took place and located two empty

3

9mm Winchester cartridge casings approximately 20-30 feet behind JANE DOE's parked vehicle.

10. Following NPD's initial response to the scene, NPD officers located a red Dodge Caravan matching the description provided by witnesses of the shooter's vehicle involved in the incident parked behind a residence in Shiprock, NM. NPD encountered multiple individuals at the residence who were later interviewed, as described below, leading to the identification of the parked vehicle as the same vehicle described by witnesses to the shooting.

11. On or about January 09, 2024, investigators from the FBI and NNDCI interviewed an individual identified by initials C.B. and year of birth 1966 (referred to hereinafter as "WITNESS 1"). WITNESS 1 stated she was driving into Shiprock at approximately 1:30pm that day and saw an older model maroon van with Utah license plates and tinted windows pulled off to the side of U.S. Highway near the Flowing Water Casino. WITNESS 1 observed a female jump out of the sliding door on the passenger side of the van and start walking east towards Farmington. The female appeared to be young, 17 or 18 years old and wore her hair up in a bun on top of her head. A male jumped out of the door behind the female and started chasing the female. The male was skinny, no facial hair, and wore black pants. The female was angry and did not want to go with the male. The male jumped back into the van and drove west toward Shiprock. WITNESS 1 then saw a red truck headed into Shiprock pull off the side of the road near the Chapter house after the red van passed it. WITNESS 1 followed the van to the stoplight and observed the van swerving all over the road. The van ran the red light and headed south out of

Shiprock. WITNESS 1 called 911 because she believed the driver of the van was intoxicated.

12. On or about January 09, 2024, investigators from the FBI and NNDCI interviewed an individual identified by initials J.W. and year of birth 1985 (referred to hereinafter as "WITNESS 2"). WITNESS 2 stated at approximately 1:00pm earlier that day he walked over to his neighbor's residence to ask an individual identified by initials S.K. and year of birth 1989 (referred to hereinafter as "WITNES 3") for a ride to the store. WITNESS 3 gave WITNESS 2 a ride to the Gulf gas station in Shiprock in her dad's red van. WITNESS 3 mentioned the van was hot or the police were looking for it. WITNESS 3 told WITNESS 2 she was hanging out with CAMBRIDGE earlier that day playing pool at her friend's house on U.S. Highway 64 across from the casino. CAMBRIDGE got into a fight with his girlfriend, an individual identified by initials T.P. and year of birth 1999 (referred to hereinafter as "WITNESS 5"), over a backpack. CAMBRIDGE and WITNESS 5 both walked off. WITNESS 3 finished playing pool and picked CAMBRIDGE up in the red van. CAMBRIDGE called WITNESS 5 and kept asking WITNESS 5 to give him back his backpack but she would not give it back, so CAMBRIDGE shot at the WITNESS 5'S ride. WITNESS 5 texted CAMBRIDGE back and told him he shot her aunt. When WITNESS 2 and WITNESS 3 arrived back at WITNESS 3's residence the cops showed up.

13. On or about January 09, 2024, investigators from the FBI and NNDCI interviewed an individual identified with initials M.K. and year of birth 1980 (referred to hereinafter as "WITNESS 4"). WITNESS 4 stated around 9:00am that morning she walked over to her friend's residence down the road to ask WITNESS 3 if she could take WITNESS 4's kids to school because they missed the bus. WITNESS 4 walked home and shortly after WITNESS 3

showed up in a red van and took WITNESS 4 and her children to Shiprock High School. After dropping off the children, WITNESS 3 drove home briefly to grab her ID. WITNESS 3 wanted to go pick up her friend, WITNESS 5, and go play pool. WITNESS 3 drove to a female friend's residence behind Pro Tow in Shiprock where WITNESS 5 and her boyfriend, Larence got into the van. WITNESS 4 knew the first name of WITNESS 5's boyfriend to be "Larence," but did not know his last name. The boyfriend named Larence wanted alcohol, so they drove to the gas station in Hogback to purchase alcohol. At approximately 11:00am, WITNESS 3 purchased Importers Vodka from the Hogback store. All four of them (CAMBRIDGE, WITNESS 3, WITNESS 4, and WITNESS 5) then drove to the house of WITNESS 3's friend, a residence near Hogback just off of U.S. Highway 64. WITNESS 5 and her boyfriend, who the WITNESS 4 identified as "Larence" got into an argument and both walked off from the residence. WITNESS 5 called someone for a ride who drove a maroon truck. WITNESS 4 saw WITNESS 5 jump into the maroon truck. Shortly after, WITNESS 3 finished her pool game. WITNESS 3 and WITNESS 4 jumped back into the red van and headed toward Shiprock. WITNESS 3 was driving and WITNESS 4 was in the front passenger seat. WITNESS 4 saw Larence walking down U.S. Highway 64 so they stopped and picked him up. Larence got into the front passenger seat and WITNESS 4 got in the back seat of the van. Larence wanted his bag back from WITNESS 5 and told WITNESS 3 to pull up next to the marron truck on U.S. Highway 64 near the Shiprock Chapter House. WITNESS 3 slowed down next to the maroon truck. WITNESS 4 heard "pop pop" four times and saw Larence hanging out of the passenger window with a bandanna on his face. Larence was shooting a black handgun downward, towards the maroon truck. The maroon truck immediately pulled off the side of the highway. Larence said "go go." WITNESS 3 sped up driving, running both red lights heading south on Highway 491 through

6

Shiprock. WITNESS 3 dropped Larence off at an associate's hogan by the water towers. Larence took the gun with him, which he put into a hard plastic container. WITNESS 3 appeared to be panicky. WITNESS 4 did not believe WITNESS 3 knew what was going to happen. Larence never threatened WITNESS 3 nor WITNESS 4.

      14. On or about January 09, 2024, I interviewed JANE DOE at NNMC. JANE DOE stated earlier that day she was driving from Shiprock, NM heading to her home in Farmington, NM when she saw her niece, previously identified WITNESS 5, walking along the side of the road. JANE DOE picked up WITNESS 5 and started driving back toward Shiprock in order to drop WITNESS 5 off at her residence in Shiprock. While they were driving, JANE DOE saw a red Dodge Caravan parked along the side of the road and a female was walking away from the it. JANE DOE continued driving past the red Dodge Caravan. Farther down the road, the red Dodge Caravan passed JANE DOE's truck and continued swerving through traffic ahead of JANE DOE. When JANE DOE got near the Shiprock Chapter House, she heard two loud pops immediately before the red Dodge Caravan sped past the left side of her vehicle heading in the same direction as her. JANE DOE observed a young Native American male with short hair wearing a bandanna over his face with his upper body out of the front passenger window of the red Dodge Caravan. The male was holding a handgun near the right side of his head. JANE DOE felt pain in her left leg then looked down and saw blood. JANE DOE asked WITNESS 5 if she knew who that was, but WITNESS 5 did not say anything in response. JANE DOE did not recognize the male with the handgun. JANE DOE told WINTESS 5 to call 911. During the interview, JANE DOE rated her level of pain as a ten on a scale of one to ten.

15.     JANE DOE knew that WITNESS 5's ex-boyfriend was CAMBRIDGE and that they had a two-year-old child together. CAMBRIDGE did not like JANE DOE's family and knew what JANE DOE's truck looked like.

16.     Immediately prior to the interview with JANE DOE, I was present for a discussion between JANE DOE and her attending doctor. JANE DOE was informed that the bullet had hit a major blood vessel in her left leg and she would require additional surgery beyond the capabilities of NNMC. Later that evening JANE DOE was transported to a medical facility in Grand Junction, CO for additional procedures.

17.     On or about January 10, 2024, NNDCI Criminal Investigator Dean Goldtooth contacted CAMBRIDGE's mother. CAMBRIDGE's mother confirmed the spelling of CAMBRIDGE's full name and his date of birth. CAMBRIDGE's mother also confirmed that CAMBRIDGE was dating WITNESS 5.

## CONCLUSION

18.     Based on my training, experience, and the facts as set forth in this affidavit, I submit that there is probable cause to believe CAMBRIDGE has committed violations of 18 U.S.C. §§ 113(a)(3), 1153: Assault with a Dangerous Weapon in Indian Country.

19.     I therefore request that the attached Criminal Complaint and Arrest Warrant be issued authorizing the arrest of CAMBRIDGE.

20.     This affidavit was reviewed and approved for legal sufficiency by District of New Mexico Supervisory Assistant United States Attorney Elisa Dimas.

Respectfully submitted,

*[signature: Travis Kosir]*

_____

Travis Kosir

Special Agent

Federal Bureau of Investigation

Sworn telephonically, signed remotely, and transmitted by email this 11th day of January, 2024.

*[signature: Kirtan Khalsa]*

Kirtan Khalsa

UNITED STATES MAGISTRATE JUDGE